UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

KEVIN LEWIS,

    Plaintiff,

v.

CARMEN DIAZ-PETTI, in her official capacity as Director of DCP&P/Assistant Commissioner of the New Jersey Department of Children and Families ("DCF"), et al.,

    Defendants.

CIVIL No. 18-9397 (NLH/KMW)

**OPINION**

---

**APPEARANCES:**

KENNETH J. ROSELLINI
KENNETH ROSELLINI, ATTORNEY AT LAW
636A VAN HOUTEN AVENUE
CLIFTON, NJ 07013

    *Attorney for Plaintiff Kevin Lewis.*

BRETT JOSEPH HAROLDSON
NEW JERSEY DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
25 MARKET ST.
PO BOX 116
TRENTON, NJ 08625

    *Attorney for Defendants Carmen Diaz-Petti and Christine Norbut Beyer.*

**HILLMAN, District Judge**

    This case concerns claims under 42 U.S.C. § 1983, the New Jersey Civil Rights Act, and New Jersey common law relating to a

decision by the New Jersey Division of Child Protection and Permanency ("DCP&P") to take custody of Plaintiff's three children from him and give it to Plaintiff's ex-wife. Currently before the Court is Defendants', Commissioner Christine Norbut Beyer and Assistant Commissioner Carmen Diaz-Petti (collectively, the "Moving Defendants"), Motion to Dismiss and Plaintiff's opposition. For the reasons discussed below, this Court will grant Moving Defendants' Motion to Dismiss, in part, and deny the remaining portions as moot.

**BACKGROUND**

The Court takes this recitation of facts from Plaintiff's Complaint. Plaintiff, Kevin Lewis, alleges he is an African-American and parent of three children, "L.L.," "KaL.," and "KeL." On May 16, 2016, DCP&P caseworker Rosemary Ortiz visited Plaintiff's home, told Plaintiff a complaint had been made about Plaintiff's treatment of his children, and asked to see them. Plaintiff agreed to speak with Ortiz and allow her inside to see his children. Plaintiff refused to allow Ortiz to speak with his children until after he had consulted with an attorney.

The next day, when Plaintiff went to pick up his children at school, local police officers informed him that his children had been removed from his custody by DCP&P. Plaintiff, at some point, spoke with Ortiz who told him his children were in DCP&P custody, but refused to disclose their location. Plaintiff

2

later learned Defendant Lauralie Lewis, his ex-wife, had made a false allegation of abuse and that the children had been placed with her. Plaintiff also learned that Defendant Lewis had allegedly influenced his children to make false statements to DCP&P, which led to the investigation. Those false allegations included allegations of physical abuse of which Plaintiff claims there was no physical evidence and which a proper investigation would have revealed as false. For ninety days, Plaintiff was unable to have contact with his children.

DCP&P instituted legal proceedings against Plaintiff, alleging he had abused or neglected his children. A full fact-finding hearing was held. Plaintiff alleges that he proved there was "no basis for the allegations and the abuse and neglect allegations . . . were dismissed by [court order on] June 30, 2017." (Pl.'s Compl. ¶ 30.) In August 2016, Plaintiff was allowed ninety minutes of supervised visitation with his children every week. Besides this visitation, the children were not returned to Plaintiff's custody.

Plaintiff alleges his children were mistreated while in DCP&P's or his ex-wife's custody. The mistreatment resulted in mental health issues with one child, the development of diabetes in another, and expulsion from school for the third, among other things. Plaintiff complained to DCP&P about the mistreatment,

specifically to a DCP&P supervisor, Defendant Jennifer Malloy, but Plaintiff alleges DCP&P did not investigate his claims.

Plaintiff also makes allegations beyond DCP&P's failure to investigate. Plaintiff claims DCP&P caseworker, Defendant Shelia Walderama,[1] falsely testified in the underlying matter concerning Plaintiff's ability to administer diabetic treatment to his child. Plaintiff claims a DCP&P caseworker, Defendant Chinuso Akunne, delayed medical attention for one of Plaintiff's children, belittled him in front of the child, and "intentionally and maliciously interfered with Plaintiff's reunification therapy with his children." (Pl.'s Compl. ¶¶ 47-51.) Plaintiff additionally alleges that Defendants Jasmine Peters, a DCP&P caseworker, and Lewis threatened his children on multiple occasions that "they will soon be questioned by court personnel and if they say they want to live with their father they all will be thrown in foster care."[2] (Pl.'s Compl. ¶ 37.)

Additionally, Plaintiff alleges improper conduct by DCP&P contractors. Plaintiff claims Defendants Dr. Brian Eig or Dr. Lee and Associates "fabricated a false psychological evaluation of Plaintiff with an improper diagnosis" and recommended

---

[1] Plaintiff refers to Shelia as "Walderman" in his complaint. (Pl.'s Compl. ¶¶ 43-45.) The Court will refer to this individual as Walderama, as that is the spelling used in the case caption.

[2] Plaintiff alleges Defendant Lewis admitted to this under oath.

4

placement of his children with Defendant Lewis.  Plaintiff alleges this same individual or entity has done the same in other cases.  Plaintiff claims that Defendant Dr. Stephanie Lanase "fabricated a false psychological evaluation of Plaintiff's children, including a false diagnosis of post traumatic stress disorder" and the underlying judge found these findings "were, unexplainably, extremely biased against Plaintiff."  (Pl.'s Compl. ¶¶ 55-56.)  Finally, and similarly, Plaintiff claims Defendant Dr. Melissa McCausland fabricated a false diagnosis of Plaintiff's children, stating they suffered from post-traumatic stress disorder.  Defendant Dr. McCausland did not respond to witness subpoenas in the underlying matter.

Plaintiff's complaint in this Court alleges six counts against multiple defendants.  Plaintiff alleges claims under 42 U.S.C. § 1983, NJCRA, and New Jersey common law.  In the first count, Plaintiff alleges a violation of the Fourteenth Amendment by Defendants Malloy, Ortiz, Peters, Walderama, and Akunne.  In the second count, Plaintiff alleges unlawful retaliation against his exercise of First Amendment rights by the same Defendants.  In the third count, Plaintiff alleges violations of the Fourth, Fifth, and Fourteenth Amendments by Moving Defendants for an allegedly unconstitutional policy.  In the fourth count, Plaintiff also alleges violations of Due Process and Equal Protection rights, here by all Defendants except Moving

5

Defendants.  In the fifth count, Plaintiff alleges violations of the NJCRA by all Defendants except Moving Defendants.  Finally, in the sixth count, Plaintiff claims Defendant Lewis has committed malicious abuse of process.

On September 18, 2018, Moving Defendants filed the pending Motion to Dismiss.  Attached to the Motion to Dismiss is the Certification of Elizabeth Wallace, Deputy Attorney General for New Jersey who is responsible for handling the underlying child custody matter.  (Defs.' Mot. to Dismiss, Ex. A.)  Ms. Wallace states that the custody matter is still ongoing in the New Jersey Superior Court, Chancery Division, Family Part, Burlington County.  (Defs.' Mot. to Dismiss Ex. A ¶¶ 1-4.)  The Motion to Dismiss is fully briefed and ripe for adjudication.

## ANALYSIS

### A. Subject Matter Jurisdiction

This Court possesses subject matter jurisdiction over this case pursuant to 42 U.S.C. §§ 1331 and 1367.

### B. Motion to Dismiss Standard

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well

6

settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009)). A court may "generally consider only the allegations contained in the complaint,

7

exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

**C. Motion to Dismiss**

Moving Defendants challenge Plaintiff's complaint on multiple grounds.[3] The Court will only consider whether this

---

[3] Moving Defendants also argue that monetary claims must be dismissed based on immunity grounds and that Plaintiff does not have standing to assert a claim for injunctive relief. Based on

8

case is subject to abstention under the Younger doctrine. The most recent Supreme Court formulation of this abstention doctrine can be found in Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013). The Supreme Court noted the three circumstances under which a federal court should consider whether to abstain from hearing a case: (1) "[w]hen there is a parallel, pending state criminal proceeding," (2) when there are "particular state civil proceedings that are akin to criminal prosecutions," and (3) when there are particular state civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." Id. at 72-73 (citing Huffman v. Pursue, Ltd., 420 U.S. 592 (1975); Pennzoil Co. v. Texaco Inc., 481 U.S. 1 (1987)).

If the underlying state court case fits within one of these categories, a federal court should consider an additional three factors. First, is there "an ongoing state judicial proceeding"; second, "do the proceedings implicate important state interests"; and third, "is there an adequate opportunity in the state proceedings to raise constitutional challenges." Middlesex Cty. Ethics Comm'r v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982). But, even if these three factors are satisfied, "abstention is not appropriate if state proceedings

---

the Court's decision as to Younger abstention, this Court will deny Moving Defendants' other arguments as moot.

9

are being undertaken in bad faith, or if there are other extraordinary circumstances, such as where state proceedings are based on a flagrantly unconstitutional statute." Gwynedd Props., Inc. v. Lower Gwynedd Twp., 970 F. 1195, 1200 (3d Cir. 1992) (citing Middlesex, 457 U.S. at 435).

To determine whether Younger abstention is appropriate, the Court will first determine whether the underlying state court proceeding is within the class of cases contemplated as deserving of abstention. Second, the Court will examine the three factors noted supra. Third and finally, the Court will determine whether abstention is inappropriate based on any of the reasons discussed supra.

First, the Court must determine whether the state court proceeding is of the type that is amenable to Younger abstention. It is. The Supreme Court's decision in Moore v. Sims is instructive. 442 U.S. 415 (1979). In that case, the Court reversed a district court's decision and found Younger abstention applicable. Id. at 434-35. Moore involved an ongoing state court proceeding concerning whether parents had engaged in abuse of their children. Id. at 418. This is exactly the case here.

Contrary to Plaintiff's argument, the Supreme Court has not further narrowed or undercut the Younger doctrine, at least as it applies to a case of this type. While the Court agrees

10

Younger is an "exceptional" doctrine only applicable in a narrow set of circumstances, it appears Sprint reaffirms the viability of the Younger doctrine in the factual circumstances already recognized by the Supreme Court but declines to extend it any further. See Sprint Communs., Inc., 571 U.S. 69 (2013).

Because this type of case is amenable to abstention, the Court must consider whether it satisfies the three factors discussed supra. The first factors is satisfied here. The parties agree that there is an ongoing state proceeding.[4] The second and third factors, however, are contested. Plaintiff asserts that the second factor cannot be met here because there is no important state interest. This argument depends on a narrow interpretation of legal doctrine and a specific factual determination. The state, according to Plaintiff, only has a legal interest in the parent-child relationship if there is abuse or threat of abuse. Plaintiff claims in his complaint that the state court proceeding has already determined that there was no abuse, so New Jersey no longer has a valid, constitutional interest. The Moving Defendants respond by arguing the fact that the state court continues to restrict

---

[4] Because the parties agree on this point, the Court need not determine whether the certification attached to Moving Defendants' motion may be properly considered by the Court.

11

Plaintiff's time with his children suggests that Plaintiff has not been cleared of all wrongdoing.

According to Plaintiff a "state has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." Croft v. Westmoreland Cty. Children & Youth Servs., 103 F.3d 1123, 1126 (3d Cir. 1997). Plaintiff's argument is both factually and legally deficient. The parties agree that New Jersey is still involved in the pending proceedings concerning Plaintiff and the facts at-issue in this matter. Thus, New Jersey could conceivably still have an interest in preventing future, imminent abuse if it believes Plaintiff poses a threat to his children. The Court does not mean to suggest that is truly the case, but only notes this to show that New Jersey could still conceivably have an interest even assuming Plaintiff's assertions. That fact that New Jersey continues to pursue the matter suggests it does have an interest.

Moreover, whether it is appropriate for New Jersey to continue to separate Plaintiff from his children may have the constitutional dimension indicated, but the measure of state interest for this analysis is not so limited. The Third Circuit has opined that "New Jersey has a substantial interest in fair administration of child custody and parental rights

proceedings." McDaniels v. N.J. Div. of Youth and Family Servs., 144 F. App'x 213, 215 (3d Cir. 2005). See also Lisboa v. N.J. Div. of Child Prot. & Permanency, 1:18-cv-08744 (NLH/JS), 2019 U.S. Dist. LEXIS 19644, at *9 (D.N.J. Feb. 7, 2019) (collecting cases on this point and stating "the case law makes it abundantly clear that it is inappropriate for a federal court to interfere with the state's interest in administering its own family court"). As the question of custody is still to be determined and the rights of the parents in this matter have not been set with finality, New Jersey maintains a valid, legal interest in this matter. Thus, regardless of whether the state court has decided the factual question of past (or even the threat of future) abuse, New Jersey maintains an interest in the matter. The Court finds the second factor has been satisfied.

Plaintiff asserts the third Younger factor is not satisfied here because the New Jersey Superior Court, Chancery Division, Family Part is "a court of limited jurisdiction, and not capable of providing Plaintiff with due process to pursue his § 1983 claims in this case." (Pl.'s Opp'n Br. 17.) Plaintiff also argues that only "actions and proceedings unique to and arising out of a family or a family-type relationship" may fall within the jurisdiction of the Family Part. (Pl.'s Opp'n Br. 18 (citing N.J. Court Rule 5:1-2).) Finally, Plaintiff argues the Third Circuit's ruling in FOCUS v. Allegheny Cty. Ct. of Common

13

Pleas, 75 F.3d 834 (3d Cir. 1996) would bar the invocation of Younger here. Moving Defendants argues the Family Part may adjudicate constitutional matters relating to the facts at-issue in this case.

The Third Circuit has previously addressed the exact issues raised by Plaintiff. Anthony v. Gerald Council, 316 F.3d 412, 422 (3d Cir. 2003). In that matter, the Third Circuit held the Family Part constitutes a "continuing, open and available forum to raise any issues." Id. The Third Circuit also noted those under the auspices of the Family Part's jurisdiction retained appellate rights. Id. Plaintiff has presented no argument showing this holding is now incorrect.

Moreover, Plaintiff's quotation of FOCUS is so limited as to the point of being misleading. In that case, FOCUS attempted to intervene in a matter in Pennsylvania state court. 75 F.3d at 843. The state court refused to allow FOCUS to intervene. Id. As a result, the Third Circuit found there was no ongoing state matter as to FOCUS for the purposes of a Younger analysis. Id. In ruling so, the Third Circuit dismissed arguments that FOCUS was required to exhaust state remedies before proceeding to federal court. Id. In other words, Younger does not require a party to pursue claims in state court if the state court will not allow it to be party to an action. This case has no relation factually or legally to this matter. Thus, this Court

finds the third factor has been satisfied.  Accordingly, unless Plaintiff provides a reason why abstention is inappropriate, the Court must abstain from hearing this matter pursuant to the Younger doctrine.

Finally, the Court will determine whether there is any reason why abstention would be inappropriate.  No party asserts that any statute at-issue is facially unconstitutional.  As a result, the only other way this Court may continue to assert jurisdiction is if the state proceedings are being undertaken in bad faith and for the purposes of harassment.  It is Plaintiff's burden to establish this exception to abstention.  Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989).

Plaintiff argues because the abuse allegations were dismissed, "[a]ny pending DCP&P[] proceedings against Plaintiff, therefore, could only be in bad faith or for purposes of harassment, as it has no Constitutional interest justifying interference in the integrity of Plaintiff's family."  (Pl.'s Opp'n Br. 21.)  This Court finds this argument unavailing for the same reason discussed supra.  New Jersey's interest is not so limited and New Jersey appears to still be actively litigating the underlying matter.  As Plaintiff has not met his

burden to establish bad faith or harassment, this Court must abstain in this matter.[5]

The Court agrees with Plaintiff, Younger "abstention rarely should be invoked." Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399 (3d Cir. 2005) (quoting Ankenbrant v. Richards, 504 U.S. 689, 705 (1992)). Unfortunately for Plaintiff, the Court finds this is one of those rare situations in which the Court must abstain. Plaintiff's claims may not be brought in this Court until after the parallel state proceedings have been completed. For this Court to proceed at this point in time could lead to the very friction between federal and state courts Younger was intended to prevent. All claims, against all Defendants, fall within Younger abstention. See, e.g., Gormley v. Gormley, No. 17-cv-7874 (NLH/AMD), 2018 U.S. Dist. LEXIS 83694, at *1-11 (D.N.J. May 18, 2018) (dismissing federal and state claims requesting injunctive, declaratory, and compensatory relief against private and state actors). Accordingly, this Court will dismiss this case in its entirety pursuant to the Younger doctrine.

---

[5] The Court notes that Plaintiff's Complaint alleges unconstitutional actions by Defendants. But, Plaintiff does not assert these allegations restrict the Court from imposing Younger abstention. The Court may only consider the arguments properly before it.

**CONCLUSION**

For the foregoing reasons, Moving Defendants' motion to dismiss will be granted, in part as to Younger abstention only, and denied, on all other grounds as moot. This Court's decision on Younger abstention grounds requires the Court to dismiss this case in its entirety, without prejudice.

An appropriate Order will be entered.


Date: April 25, 2019          s/ Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.